IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEBRA MOORE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:17cv191-WC |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

In January 2014, Debra Moore ("Plaintiff") filed an application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("the Act") alleging disability beginning on February 4, 2013. Plaintiff's application for SSI was denied on January 21, 2014, after the Commissioner determined that Plaintiff did not meet the income and resource requirements for SSI. Plaintiff's application for disability and DIB was denied on February 20, 2014. After Plaintiff's applications for benefits were denied at the initial administrative level, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff had not been under a disability since February 4, 2013, as defined in the Social Security Act. Plaintiff appealed to the Appeals Council and, on February 28, 2017, the Appeals Council denied review of the ALJ's decision. Accordingly, the ALJ's decision consequently

became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 20); Def.'s Consent to Jurisdiction (Doc. 21). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner and REMANDS the matter for further proceedings.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal

---

[4] *See* 20 C.F.R. pt. 404 Subpt. P, app. 2.

4

conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 28 years old on the date last insured for DIB. Tr. 185, 192. Plaintiff completed the eleventh grade and has past relevant work as a machine operator. Tr. 63, 205. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of February 4, 2013[,] through her date last insured of December 31, 2013[.]" Tr. 22. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "disc herniation, compressing the proximal left sacroiliac nerve root without radiculopathy; obesity; mild foraminal stenosis, cervical spine with questionable cervicalgia; soft disc protrusion, eccentric disc bulge associated annulus tear, lumbar spine; mild carpal tunnel syndrome, bilateral; headache with unclear etiology, possibly migraine; history of unspecified hearing loss, resolved; mild valgus, right foot; status post septoplasty, submucous resection of turbinates and bilateral tube placement; status post history of right knee arthroscopy; questionable patellar dislocation, right, surgically repaired, knee; very questionable rheumatoid arthritis; questionable history of Plaquenil-blurred vision; and questionable history of sinusitis." Tr. 22. At Step Three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed" in the Social

5

Security Act. Tr. 29. Next, at Step Four, the ALJ articulated Plaintiff's RFC, stating Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand and/or walk at least two hours without interruption and six hours over the course of an eight-hour workday. The claimant can sit at least two hours without interruption and six hours over the course of an eight-hour workday. The claimant cannot climb ropes, poles, or scaffolds. The claimant can occasionally climb ramps, stairs and ladders. The claimant can frequently use her upper extremities for reaching overhead, pushing, pulling, handling and fingering. The claimant can occasionally use [her] lower extremities for pushing, pulling, and the operation of foot controls. The claimant can occasionally balance, stoop, kneel, and crouch. The claimant can occasionally work in humidity, wetness, and extreme temperatures. The claimant can occasionally work in dusts, gases, odors, fumes, and poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant can occasionally work with vibration. The claimant can occasionally operate motorized vehicles.

Tr. 30. Having consulted with a VE at the hearing, the ALJ concluded that Plaintiff was unable to perform any past relevant work. Tr. 31. At Step Five, the ALJ determined that, "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed[.]" Tr. 31. These jobs included those of a garment folder; inspector; and tagger. Tr. 32. Finally, based upon the testimony of the VE, the ALJ determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from February 4, 2013, the alleged onset date, through December 31, 2013, the date last insured[.]" Tr. 32.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents five issues for the court to consider in its review of the Commissioner's decision: (1) whether the ALJ violated Plaintiff's due process rights by

denying her the opportunity of a supplemental hearing after writing that such request for a hearing would be granted; (2) whether the ALJ failed to develop a full and fair record by failing to consider Plaintiff's Title XVI claim; (3) whether the ALJ failed to properly evaluate the opinion evidence; (4) whether the ALJ's finding of Plaintiff's RFC is based on substantial evidence; and (5) whether the ALJ failed to follow the *Brady* standard at Step Two of the sequential evaluation process. Doc. 12 at 1. The undersigned finds the third issue dispositive and therefore will not examine the remaining issues.

V.     **DISCUSSION**

    A.     **Whether the ALJ failed to properly evaluate the opinion evidence.**

Plaintiff argues that the ALJ failed to properly consider the opinion evidence of Dr. Chivukula, a consultative neurologist that evaluated Plaintiff upon the request of the ALJ after the conclusion of Plaintiff's hearing. Doc. 12 at 14-16. As a one-time examining physician, Dr. Chivukula provided a Medical Source Statement ("MSS") in which he opined that he had "sufficient information to form an opinion within a reasonable degree of medical probability as to [Plaintiff's] past limitations," and found Plaintiff's limitations present as of 2012. R. 612. Compared to the ALJ's RFC, Dr. Chivukula found Plaintiff was more restricted in three areas: (1) Dr. Chivukula determined Plaintiff could stand and/or walk a total of two hours in an eight-hour workday, Tr. 608, while the ALJ found Plaintiff could stand and/or walk a total of six hours in the same workday, Tr. 29; (2) Dr. Chivukula opined that Plaintiff could sit for a total of four hours in an eight-hour workday, Tr. 608, while the ALJ concluded that Plaintiff could sit for six hours in that same workday, Tr. 29; and (3) Dr. Chivukula determined Plaintiff should never kneel, crouch, or crawl, Tr. 610,

while the ALJ found Plaintiff could occasionally kneel and crouch, and provided no limitations with regards to Plaintiff's ability to crawl, Tr. 29-30.

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1160–61 (11th Cir. 2004). However, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. *See* 20 C.F.R. § 416.927(c)(1)-(2), (5).[5] In addition to considering the medical evidence before him, the ALJ has a duty to develop the facts of a claimant's case fully and fairly. *Todd v. Heckler,* 736 F.2d 641, 642 (11th Cir. 1984) (citing *Ford v. Sec'y of Health & Human Serv.,* 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is required to "state specifically the weight

---

[5] *See also* SSR 96-6P (S.S.A. July 2, 1996) ("[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant. [ ]In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.*

Here, the ALJ rejected the report of Dr. Chivukula by affording it "no weight." Tr. 29. In so doing, the ALJ reasoned that Dr. Chivukula's opinion offered "no significant inferential support to relevant medical issues during the relevant period." Tr. 29. However, such reasoning is perplexing to the undersigned for a number of reasons. First, the ALJ specifically ordered a consultative examination from Dr. Chivukula post-hearing. The timeframe in which a post-hearing examination is performed would clearly be outside the period of a claimant's date last insured. Thus, it is quite odd that the ALJ would order such an examination and then reject it because it does not provide "support to relevant medical issues during the relevant period." *See* Tr. 29. Second, Dr. Chivukula found, "within a reasonable degree of medical probability" that Plaintiff's limitations were present as of 2012. Because it appears that Dr. Chivukula relied upon Plaintiff's prior medical history in reaching such a conclusion,[6] it seems as though the ALJ's proffered reason for rejecting the opinion—again, that it was outside the relevant period—is nonsensical considering Dr. Chivukula's ability to assess Plaintiff's limitations prior to her date last insured. Finally, Dr. Chivukula's medical opinion is more restrictive than the ALJ's RFC in at least three

---

[6] The Commissioner argues that there is no indication in the report that Dr. Chivukula reviewed any actual medical records from the relevant period. Doc. 15 at 15-16. However, the undersigned disagrees. While it does appear that Plaintiff provided her medical history to Dr. Chivukula through her own report or through the report of her caregiver, *see* Tr. 602, it also appears that Dr. Chivukula was provided Plaintiff's medical records for the purpose of evaluating Plaintiff for disability, *see* Tr. 604 (stating "[r]eview of the medical records provided indicates minimal changes in the cervical, thoracic and lumbar spines on MRI examination").

areas. This leads the undersigned to speculate whether the ALJ's rejection of the opinion was simply based upon the ALJ's disagreement with the restrictive nature of Dr. Chivukula's MSS and not rooted in any actual conflict with the medical evidence. Regardless of whether that is the case, the undersigned can confidently conclude that the ALJ has not offered a sensible reason to reject the opinion of Dr. Chivukula in its entirety, particularly considering that Dr. Chivukula is a one-time examining physician who evaluated Plaintiff upon the request of the ALJ for the purpose of determining whether Plaintiff was under a disability prior to her date last insured.[7] *See generally Markell v. Astrue*, No. 8:06-cv-1720-T-TBM, 2007 WL 4482245, at *4 (M.D. Fla. Dec. 19, 2007) (holding that the ALJ erred when assessing the claimant's RFC by not expressly addressing the conclusions of a non-treating, examining doctor but instead failing to express why the opinion was not adopted).

The undersigned clarifies that the ALJ is not required to give Dr. Chivukula's opinion significant weight because Dr. Chivukula is not a treating physician, nor is the ALJ required to provide "good cause" in order to discount the opinion. Dr. Chivukula is, however, a consultative, one-time examining physician, and his opinion should be afforded weight to the extent it is "supported by evidence in the case record." *See* SSR 96-6p. It may very well be that reasons exist for the ALJ to discard Dr. Chivukula's opinion, particularly

---

[7] To be sure, the Commissioner argues that the ALJ may consider other factors, including the fact that a doctor did not first see a claimant until long after the claimant's date last insured, when weighing a medical opinion. Doc. 15 at 15. While that may be so, such reasoning does not make sense in this instance when the ALJ specifically referred Plaintiff for a consultative physician, knowing that such an exam would be outside of the date of Plaintiff's date last insured. Further, as discussed above, it appears that Dr. Chivukula did review Plaintiff's previous medical records and, therefore, would have had a basis to conclude that Plaintiff's limitations were present before expiration of Plaintiff's date last insured.

10

if the opinion does not comport with Plaintiff's testimony, medical records, or other evidence in the record. But, the undersigned cannot conclude that the ALJ here has provided such sensible and rational reasons to disregard the opinion, and has instead relied upon a reason that makes no logical sense considering the circumstances surrounding the submission of the MSS. Accordingly, the undersigned concludes that the decision of the Commissioner should be reversed and remanded for further consideration.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner. A separate judgment will issue.

Done this 25th day of May, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE